# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

PAMELA COOPER,
o/b/o A.W., a minor,[1]

    *Plaintiff*,

v.                                      CASE NO. 13-CV-12035

COMMISSIONER OF              DISTRICT JUDGE STEPHEN J. MURPHY, III
SOCIAL SECURITY,               MAGISTRATE JUDGE PATRICIA T. MORRIS

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[2]

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff's minor child, A.W., is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The Complaint refers to the minor plaintiff by his full name, and therefore so does the Court's docket. However, the minor should have been referred to as "J.B.," since Rule 5.2(a)(3) of the Federal Rules of Civil Procedure prohibits the use of a minor's name and requires that only a minor's initials be used.

[2] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II. REPORT

### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for supplemental security income ("SSI") benefits for Plaintiff's minor child. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 12, 14.)

Plaintiff's daughter, A.W., was 12 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 9 at 34.) Plaintiff filed the instant claim on April 15, 2010, alleging that A.W.'s disability began on March 21, 2007. (Tr. at 130.) The claim was denied at the initial administrative stages. (Tr. at 77.) In denying the claims, the Defendant Commissioner considered oppositional defiant disorder and attention deficit hyperactivity disorder ("ADHD") as possible bases of disability. (*Id.*) On June 22, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") James N. Gramenos, who considered the application for benefits *de novo*. (Tr. at 11-29, 30-61.) In a decision dated August 23, 2011, the ALJ found that A.W. was not disabled. (Tr. at 26.) Plaintiff requested a review of this decision on December 15, 2011. (Tr. at 10.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on October 23, 2012, when the Appeals Council denied Plaintiff's request for review. (Tr. at 4-9.) After having received an extension of time to file a civil action, on May 7, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with

observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.

4

1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. § 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. § 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

A child will be considered disabled if he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations . . . ." 42 U.S.C. § 1382c(a)(3)(C)(I). To determine whether a child's impairment results in marked and severe limitations, Social Security Administration ("SSA") regulations[3] prescribe a three-step sequential evaluation process:

1. If a child is doing substantial gainful activity, the child is not disabled and the claim will not be reviewed further.

2. If a child is not doing substantial gainful activity, the child's physical or mental impairments will be considered to see if an impairment or combination of impairments is severe. If the child's impairments are not severe, the child is not disabled and the claim will not be reviewed further.

3. If the child's impairments are severe, the child's impairment(s) will be reviewed to determine if they meet, medically equal or functionally equal the listings. If the child has such an impairment and it meets the duration requirement, the child will be considered disabled. If the child does not have such impairment(s), or if the duration requirement is not met, the child is not disabled.

20 C.F.R. § 416.924(a). In the third step – namely, whether a child's impairment functionally equals the listings – the Commissioner assesses the functional limitations caused by the child's impairment(s). 20 C.F.R. § 416.926a(a). The Social Security regulations list specific impairments relevant to step three, some of which apply only to children. *Id.* § 416.924(d). A claimant bears the burden of proving that his or her impairment satisfies, or "meets," one of the listed impairments. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir.1995); *see also Hall ex rel. Lee v. Apfel*, 122 F. Supp. 2d 959, 964 (N.D. Ill. 2000) (child's claim). Once a claimant makes such a showing, an

---

[3]For a history of these regulations, see *Molina v. Barnhart,* No. 00-CIV-9522(DC), 2002 WL 377529 (S.D.N.Y. March 11, 2002).

irrebuttable presumption of disability arises and benefits must be awarded. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)).

To "meet" a listed impairment, a child must demonstrate both "A" and "B" criteria. *See* 20 C.F.R. pt. 404, subpt. P, app. 1. "A" criteria are medical findings and "B" criteria "describe impairment-related functional limitations." *Id*. An impairment that shows some but not all of the criteria, no matter how severely, does not qualify. *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). If a child's impairments do not meet a listed impairment, they may still be medically or functionally equal in severity and duration to the medical criteria of a listed impairment. 20 C.F.R. § 416.926a(a). A child's impairments "equal" a listed impairment when the child demonstrates a "'marked' limitation[ ] in two domains of functioning or an 'extreme' limitation in one domain." *Id*.

Domain analysis is equivalent to analysis of the "A" and "B" criteria for listed impairments and focuses on "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). The regulations include six domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. *Id*. A "marked" limitation is one which "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I). It "is 'more than moderate' but 'less than extreme.'" *Id*.

### D. ALJ Findings

The ALJ applied the Commissioner's disability analysis described above and found at step one that A.W. was a school-age child on the date the application was filed and is currently an adolescent and that she had not engaged in substantial gainful activity since the application date.

7

(Tr. at 17.) At step two, the ALJ found that A.W.'s oppositional defiant disorder and ADHD, by history were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that A.W.'s combination of impairments met or equaled one of the listings in the regulations. (Tr. at 18-25.) Therefore, the ALJ found that A.W. was not disabled. (Tr. at 26.)

### E.    Administrative Record

The evidence of record reveals that A.W. has never received special education services because she does not qualify for them. (Tr. at 57.)  A.W.'s disrespectful and uncooperative behavior to her teachers, i.e., saying her teacher's mouth smells like trash, saying that she hates her teacher, refusing to take her jacket off, refusing to do any work, walking out of class, was documented by the school and resulted in suspension at times. (Tr. at 168-73, 176-86.)

A teacher questionnaire completed by A.W.'s teacher at Thirkell elementary indicated that A.W. has no problems with 11 of the 13 subtopics under attending and completing tasks other than a slight problem sustaining attention play/sports activities and an obvious problem working at a reasonable pace/finishing on time. (Tr. at 191.)  Another teacher indicated that A.W. has no problem with 5 of the 13 subtopics under attending and completing tasks, and has a slight problem with 6, and an obvious problem with completing homework assignments and completing work accurately without careless mistakes but had no problem working at a reasonable pace/finishing on time. (Tr. at 198.)  Another teacher indicated that A.W. has a slight problem with 2 of the 13 subtopics under attending and completing tasks, an obvious problems with 3, a serious problem with 6, and a very serious problem with working without distracting others and working at a reasonable pace/finishing on time. (Tr. at 206.)

A.W. participated in counseling at Clear Choices Counseling in Southfield, Michigan from 2006 to 2010. (Tr. at 218-29, 241-77.)  A.W. was diagnosed with ADHD and was assessed a GAF score of 50 by Dr. Spencer Ballard. (Tr. at 229, 256, 277.)

A.W. underwent a consultative examination with John J. Jeter, M.A., L.L.P., on August 20, 2010. (Tr. at 230-34.)  A.W,'s "motor behavior is within normal time limits," her "thoughts are organized, logical, simple and concrete[,]" her speech is "clear and understandable for her age[,]" and her motor trend and thought content showed nothing unusual. (Tr. at 232.)  It was noted that A.W.s medications are "working well" and that she "sat in the lobby for one hour and in this assessment for one hour with out signs of ADD/ADHD." (Tr. at 233.)  Mr. Jeter concluded that A.W. "is able to understand, retain, and follow simple directions" and that there were "[n]o criteria met for ADD/ADHD." (*Id.*) Instead, Mr. Jeter diagnosed oppositional defiant disorder, and assessed a GAF score of 58. (Tr. at 233-34.)

Kathy A. Morrow, Ph.D., completed a child disability evaluation form on September 13, 2010. (Tr. at 235-40.) Dr. Morrow diagnosed oppositional defiant disorder and ADHD (Tr. at 235) and concluded that A.W. has a less than marked limitation in acquiring and using information, a less than marked limitation in attending and completing tasks, a marked limitation in interacting and relating with others, no limitation in moving about or manipulating objects, no limitation in caring for herself, and no limitation in health and physical well being. (Tr. at 237-38.)

At the administrative hearing, A.W. testified that she is in fifth grade and that her last report card was "horrible" because she received D's and F's on it but she did earn an A in physical education. (Tr. at 35-36.) A.W. indicated that she will be going into sixth grade next year. (Tr. at 37.)  A.W. stated that she does not have any friends and that she does not get along with her teachers but does get along with her family members and that she goes out to dinner, movies

9

shopping, etc. with them. (Tr. at 37-38.)  A.W. indicated that she likes to use the computer, does not like to read, and likes to talk on the phone with her cousins. (Tr. at 39.)  A.W. testified that she takes medication to calm her down and that it lasts until "it's almost getting dark." (Tr. at 40.)  A.W. stated that she gets in trouble for fighting in school a lot and has been suspended because people pick fights with her or say things about her. (Tr. at 40-41.)  A.W. indicated that her chores around the house are cleaning up the bathroom and cleaning her room and that she does those chores. (Tr. at 42.)  However, A.W. said she does not do her homework and when asked why, she responded, "I just never do it." (*Id.*)

A.W.'s mother testified that A.W. has been in trouble at school for not only fighting but also stealing other student's cell phones or video games, and threatening other students and teachers. (Tr. at 43, 52.)  She also stated that she has other children on medication and that when they are on their medication, "they get along well" but without A.W.'s medication being "increase[d], it was chaos, doing like stuff to hurt the baby, stuff to make the 6 year old cry, fighting the youngest sister, like, and this is like happening all at once.  It's too much for me, you know..." (Tr. at 49.)  She indicated that A.W. had been kicked out of three schools within the past year for behavior issues. (Tr. at 51.)  None of A.W.'s incidents with others involved weapons and A.W. has not been involved in any juvenile delinquent proceedings. (Tr. at 52.)  A.W.'s mother also stated that none of the neighborhood parents want their children playing with A.W.. (Tr. at 53.)  When asked whether A.W. completes tasks, her mother responded, "When she feels like she, like if she start at 1:00, she'll take her time on purpose.  It gets completed but not by 1:30, it get completed maybe by 4:30.  But she completes it, just take her time because she feel like she don't want to anyway." (Tr. at 54.)  Her mother stated that A.W. will "[s]it in the room and watch TV [especially Hannah Montana] if she's not tormenting one of the other kids.  She'll sit outside on the porch." (Tr. at 54-

10

55.) She added, "As long as Disney Network is on, she's okay." (Tr. at 55.) A.W.'s mother testified that A.W. can take care of her own hygiene but doesn't want to so she either yells at her or does the task, such as fixing her hair, for A.W.. (Tr. at 56.) She further testified that A.W. hides her homework or A.W. will say she does not have homework when she does; then the home work will be found in A.W.'s desk at school. (Tr. at 56-57.)

### F.    Analysis and Conclusions

#### 1.    Legal Standards

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's child disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

#### 2.    Substantial Evidence

Plaintiff contends that substantial evidence fails to support the findings of the Commissioner. (Doc. 12.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff specifically contends that the ALJ incorrectly held that the Plaintiff did not meet or that his impairments did not functionally equal the requirements of Listing because the "ALJ incorrectly held that the minor had a less than marked limitation in the area of attending and completing tasks." (Doc. 12 at 7.) (emphasis omitted).

"Functional equivalence is determined by 20 C.F.R. § 416.926a, which requires a 'marked' impairment in two 'domains' or an 'extreme' impairment in one domain." *Kelly v. Comm'r of Soc.*

11

*Sec.,* 314 F. App'x 827, 829 (6th Cir. 2009) (quoting 20 C.F.R. § 416.926a(d)). An extreme limitation is defined as one that "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities" and that is "more than marked." 20 C.F.R. § 416.926a(e)(3).

Here, the ALJ concluded that A.W. had a less than marked limitation in acquiring and using information (Tr. at 21), a less than marked limitation in attending and completing tasks (Tr. at 22), marked limitation in interacting and relating with others (Tr. at 23), no limitation in moving about and manipulating objects (Tr. at 24), no limitation in the ability to care for herself (Tr. at 25), and no limitation in health and physical well-being. (Tr. at 25-26.)

The ALJ's findings comport with those made by Dr. Morrow, which are the only findings made by a doctor of psychology. (Tr. at 237-38.)

As indicated above, only one domain is at issue: attending and completing tasks. (Doc. 12 at 7.) I suggest that substantial evidence supports the ALJ's findings. The ALJ's findings are not only in accord with Dr. Morrow's opinion but are also largely supported by the assessments of A.W.'s teachers which generally found only minor problems in attending and completing tasks. (Tr. at 191, 198, cf., 206.)

To the extent that the teachers' opinions conflict with the opinions of the doctors, I suggest that there can be no error for the ALJ's reliance on the opinions of the doctors over the teachers. Teachers are not treating sources entitled to any deference, whereas psychologists are treating sources and therefore are entitled to deference. 20 C.F.R. §§ 404.1502; 404.1527(d)(2); 404.913(d)(2); SSR 06-03p, 2006 WL 2329939, at *1-2 (2006); *Perry ex rel. G.D. v. Comm'r of Soc. Sec.*, 501 F. App'x 425, 427 (6th Cir. 2012) (the minor's "teachers are not acceptable medical sources").

In addition, the ALJ's findings are supported by the consultative examiner's findings that A.W.s medications are "working well[,]" that A.W. "is able to understand, retain, and follow simple directions" and that there were "[n]o criteria met for ADD/ADHD." (*Id.*)

Finally, I suggest that the ALJ's findings are supported by A.W.'s and his mother's statements.  A.W. indicated she is able to complete her chores around the house of cleaning up the bathroom and cleaning her room and when asked why she does not complete her homework she did not respond that it is difficult for her to do so but rather that she just does not do it, revealing more defiance than lack of ability. (Tr. at 42.)  When asked whether A.W. completes tasks, her mother responded that A.W. can complete tasks but "she'll take her time on purpose" "because she feel like she don't want to anyway." (Tr. at 54.)  Again, this reveals defiance rather than a lack of the ability to concentrate or complete a task.

I therefore suggest that substantial evidence supports the ALJ's finding that A.W. has a less than marked limitation in the domain of attending and completing tasks and that substantial evidence also supports the remainder of his findings which are unchallenged.

### 3.     Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Date:  July 30, 2014                               /S PATRICIA T. MORRIS
                                                   Patricia T. Morris
                                                   United States Magistrate Judge